2010 UT App 297

John Daniel THORPE aka Danny Thorpe, Plaintiff and Appellant,

v.

WASHINGTON CITY, a municipal corporation; and Unknown Persons 1–10, individually, Defendants and Appellees.

No. 20090798–CA.

Court of Appeals of Utah.

Oct. 28, 2010.

Justin D. Heideman, Provo, for Appellant.

Bryan J. Pattison and Jeffrey N. Starkey, St. George, for Appellees.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶ 1 Plaintiff John Daniel Thorpe appeals the district court's order granting summary judgment on behalf of defendant Washington City (the City). Thorpe argues that sum-

mary judgment in favor of the City was improper because (1) he timely complied with the statutory filing requirements to preserve his whistleblower claim, (2) an appeal to the court of appeals following an administrative hearing is permissive and does not preclude him from filing his claims in district court, and (3) he adequately pleaded his cause of action for unjust enrichment. We disagree with Thorpe and, accordingly, affirm.

## BACKGROUND

¶ 2 Thorpe is a former employee of the Washington City Public Works Department. The City terminated Thorpe's employment on March 15, 2004, after Thorpe failed a breath alcohol test—the second such failure during his time as a City employee.[1] Pursuant to Utah Code section 10–3–1106, *see* Utah Code Ann. § 10–3–1106(2)(a) (Supp. 2004),[2] Thorpe appealed his termination to the Washington City Employee Board of Appeals (the Board).

¶ 3 On April 6, 2005, the Board held an administrative hearing in which Thorpe "appeared with his attorney, confronted the evidence against him, and gave testimony concerning his version of events." After the hearing, the Board made the following findings of fact: "City policy ... create[d] a drug-free [workplace] policy, meaning that any level of alcohol in [an employee's] breath or blood violates that policy and is grounds for termination"; "Thorpe received and accepted the Washington City drug-free policy, and ... agreed that the policy was a condition of his continued employment"; the breath and urinalysis tests performed on Thorpe were reliable, and Thorpe's positive results violated the City's drug-free policy; Thorpe presented "no competent evidence or testimony [to] challenge[ ] either the urinalysis procedure or the result"; although Thorpe arranged for his own independent breath alcohol test, that test also showed an alcohol level that "by itself violate[d] the Washington drug-free policy"; and based on Thorpe's 2002 alcohol use in violation of the City's policy and "the multiple positive ...

---

1. Thorpe additionally submitted to a urinalysis test, which he also failed.

2. We cite to the Utah Code provisions in effect at the time of the underlying action in this case.

alcohol tests on March 9th, 2004, ... [the] City's decision to terminate Mr. Thorpe was reasonable under the circumstances and supported by reliable evidence." Based on these facts, the Board unanimously affirmed the City's decision to terminate Thorpe's employment.

¶ 4 Thorpe did not timely appeal the Board's decision to the Utah Court of Appeals. Instead, after waiting nearly five months following the Board's hearing, Thorpe filed a notice of claim with the City. Thorpe then waited almost one additional year before filing the complaint that commenced this action in district court. Indeed, by the time Thorpe filed his complaint on August 1, 2006, a total of 482 days had passed from the time the Board upheld the City's decision to terminate him.

¶ 5 In his complaint, Thorpe made claims alleging unjust enrichment, wrongful discharge, due process violations, breach of contract, violations of the Americans with Disabilities Act (ADA), and "whistleblower" violations under the Utah Protection of Public Employees Act. He also sought attorney fees under the "Private Attorney General" doctrine. In response, the City moved for summary judgment, claiming that the district court lacked jurisdiction to review the Board's decision; that Thorpe could not recover for unjust enrichment where he did not show that his existing legal remedies were inadequate; and that his whistleblower claim was untimely and meritless due to Thorpe's admission that he was not, in fact, terminated for "blowing the whistle" on the City.

¶ 6 Following a hearing on the City's motion, the district court issued an order granting summary judgment in favor of the City. The court concluded that Thorpe's whistleblower claim was not timely filed, that the district court lacked jurisdiction to review the Board's decision, and that Thorpe failed

to prove a required element of his unjust enrichment claim.[3] Thorpe now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 7 First, Thorpe argues that the trial court erred in granting the City's motion for summary judgment on his whistleblower claim. Second, Thorpe asserts that the trial court erred in granting the City's summary judgment motion with respect to his wrongful discharge, due process, and breach of contract claims.[4] Finally, Thorpe contends that the trial court erred in granting summary judgment in favor of the City on his unjust enrichment claim.

¶ 8 Summary judgment may be granted only when there are no genuine issues of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We "review[ ] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). "[W]e give no deference to the trial court's conclusions of law." *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 636 (Utah 1989).

## ANALYSIS

¶ 9 Each of Thorpe's stated issues challenges an aspect of the district court's decision to grant the City's motion for summary judgment. As to each of the issues raised, Thorpe has not argued that genuine issues of material fact exist. Rather, he challenges the legal conclusions of the district court.

### I. Whistleblower Act

¶ 10 Thorpe argues that the district court erred in ruling that he failed to timely file his cause of action under the Whistleblower Act. He alleges that by filing a notice of claim

---

3. Additionally, the district court noted that Thorpe conceded that his ADA claim should be dismissed.

4. The City takes issue with Thorpe's characterization of his second issue as one implicating wrongful discharge, due process violations, and

breach of contract. Opposing the labels Thorpe has assigned to his claim, the City argues that the essence of Thorpe's action is a belated appeal of the Board's decision to uphold his employment termination and that, as such, we are without jurisdiction to consider it at this late date.

pursuant to the Governmental Immunity Act of Utah, he tolled the statute of limitations of the Whistleblower Act because the notice qualified as a "civil action." The City contends that not only did Thorpe's notice of claim not qualify as a "civil action," but that it was not timely under the Whistleblower Act and that Thorpe could not avail himself of the protections of the Whistleblower Act in any event because his termination was in no sense a product of his "blowing the whistle."

¶ 11 The Utah Protection of Public Employees Act, commonly known as the Whistleblower Act (WBA), *see* Utah Code Ann. §§ 67–21–1 to –9 (2004), prohibits public employers from "tak[ing] adverse action against an employee" who, in good faith, blows the whistle on the government by exposing, inter alia, "waste of public funds, property, or manpower, or a violation or suspected violation of a law, rule, or regulation." *Id.* § 67–21–3(1)(a). "An employee who alleges [employer retaliation in] violation of [the WBA] may bring a civil action for appropriate injunctive relief or actual damages, or both, within 180 days after the occurrence of the alleged violation of [the WBA]." *Id.* § 67–21–4(2).

¶ 12 The Governmental Immunity Act of Utah (GIA), *see* Utah Code Ann. §§ 63–30d–101 to –904 (2004),[5] immunizes governmental entities and their employees "from suit for any injury that results from the exercise of a governmental function." *Id.* § 63–30d–201(1). While the GIA expressly waives immunity for suits to collect actual damages under the WBA, *see id.* § 63–30d–301(2)(f), it does not waive the requirement that a notice of claim be filed pursuant to section 63–30d–401, *see id.* § 63–30d–401(2). Thus, an employee may bring a WBA claim against a governmental entity, provided that the employee satisfies the GIA requirement of filing a notice of claim. *See id.* Such a notice must be "filed with the [appropriate authority] within one year after the claim arises." *Id.* § 63–30d–402. "Within sixty days of the filing of a notice of claim, the governmental entity ... shall inform the [employee] in writing that the claim has either been ap-

proved or denied." *Id.* § 63–30d–403(1)(a). If the claim is denied—or deemed to be denied due to the governmental entity's failure to approve or deny the claim by the end of the sixty-day period, *see id.* § 63–30d–403(1)(b)—the employee "may institute an action in the district court against the governmental entity," *id.* § 63–30d–403(2)(a). However, by the terms of the GIA, the employee must bring the action "within one year after denial of the claim or within one year after the [sixty-day] period ... has expired." *Id.* § 63–30d–403(2)(b).

¶ 13 The issue squarely presented in this appeal is the apparent inconsistency between the WBA and the GIA. Did Thorpe have a full year after his claim was denied to file his civil action, as provided in the GIA, or only 180 days, as provided in the WBA? Thorpe accepts that the specifically applicable provisions of the WBA control and that he only had 180 days. He argues, however, in favor of an expansive interpretation of what constitutes a "civil action."

### A. Thorpe Failed to Comply with the "Civil Action" Requirement.

■ ¶ 14 Thorpe alleges that the City violated the WBA on April 6, 2005, the date his appeal was denied by the Board. Yet he did not file his complaint until August 1, 2006, which was clearly more than 180 days after the alleged violation and thus untimely under section 67–21–4(2) of the WBA. *See id.* § 67–21–4(2) (2004). However, Thorpe argues that he did comply with the WBA's 180–day statutory period when, on September 1, 2005, he filed a notice of claim pursuant to the GIA. *See id.* §§ 63–30d–401, –402. Because his notice of claim referenced the alleged WBA violations, and because such notice was filed before the 180–day statutory period expired, Thorpe asserts that he complied with the WBA's requirements. We disagree.

¶ 15 Section 67–21–4(2) of the WBA does not contemplate that the employee may assert his claim in any form or fashion he pleases. Rather, it requires that the employee "bring a *civil action* for appropriate injunctive relief or actual damages, or both"

---

5. The Legislature recodified the GIA in 2008. Its current version may be found in Title 63G of the

Utah Code. *See* Utah Code Ann. §§ 63G–7–101 to –904 (2008 & Supp.2010).

within the 180–day statutory period. Utah Code Ann. § 67–21–4(2) (emphasis added). We presume that the Legislature consciously selected the term "civil action" and intended that it be used in accordance with its common and accepted meaning. *See Nelson v. Salt Lake Cnty.*, 905 P.2d 872, 875 (Utah 1995) ("We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning."). "Civil action" is a term of art, and a rather precise one at that. "A civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint[.]" Utah R. Civ. P. 3(a). *See, e.g., State v. Miller*, 2007 UT App 332, ¶ 16, 170 P.3d 1141 (stating that because arbitration "does not require the filing of a complaint and is not conducted in a court of this State," it is not a "civil action"). The term does not expansively include any and all filings having a civil character, such as notices of claim filed with administrative agencies. Notices of claim, like the one Thorpe filed, are not filed in district court but, instead, are filed with, and are designed to give notice to, the governmental entity against whom a civil action may eventually be filed. *See* Utah Code Ann. § 63–30d–402. Therefore, merely filing a notice of claim does not, by itself, satisfy the timeliness requirement of the WBA. On this basis alone, Thorpe failed to comply with the statutory requirements of the WBA and, therefore, the district court correctly granted summary judgment in favor of the City on Thorpe's WBA claim.

B. Thorpe Failed to Timely File a Civil Action Under the Whistleblower Act and the Governmental Immunity Act of Utah.

¶ 16 Thorpe argues, in the alternative, that submission of a notice of claim under the GIA within the WBA's 180–day statutory filing period effectively tolls the requirement for plaintiffs to file a complaint. Thorpe relies on the Utah Supreme Court's ruling in *Hall v. Utah State Department of Corrections*, 2001 UT 34, 24 P.3d 958, in support of his argument. In that case, Hall, a state corrections officer, resigned after making public reports regarding inmate hazing inci-

dents. *See id.* ¶¶ 3–5. Hall's former employer informed him that it would not provide a positive recommendation for future employment. *See id.* ¶ 5. Ten months later, while still unable to obtain employment, and believing that his former employer's refusal to favorably recommend him was attributable to his whistleblowing, Hall filed suit against his former employer, claiming damages under the WBA. *See id.* ¶¶ 5–6. Hall, however, failed to file a notice of claim prior to filing his complaint. *See id.* ¶¶ 6, 21.

¶ 17 The Utah Supreme Court held that the GIA "does not protect the state and its political subdivisions from lawsuits arising under the [WBA]" because the WBA "statutorily waive[s]" the broad immunity granted by the GIA. *Id.* ¶ 18. Indeed, the *Hall* court noted,

> [b]arring [WBA] claims through governmental immunity would nullify a very specific statutory provision at the expense of preserving a much more general one; it would render the [WBA]'s creation of a cause of action entirely inoperative at the expense of preserving absolute[ ] protection from suit that the [GIA] expressly contemplates can be waived.

*Id.* Nevertheless, the Court observed that the GIA "clearly requires that where the state may be sued—such as under the [WBA]—potential plaintiffs must provide a formal 'notice of claim' to the appropriate governmental official before bringing their action." *Id.* ¶ 22. The Court also concluded that "[o]nce a plaintiff's notice of claim is filed, the Act continues to bar its initiation in court until the state either denies the claim in writing or fails to act" for sixty days. *Id. See* Utah Code Ann. § 63–30d–403(1)(a) (2004). Given this, the Court ultimately affirmed the district court's dismissal of Hall's WBA claims because he failed to comply with the GIA's notice of claim requirements. *See Hall*, 2001 UT 34, ¶ 27, 24 P.3d 958. *See also* Utah Code Ann. § 63–30d–401.

¶ 18 Based on *Hall*, Thorpe argues that "even though the [GIA] does not protect governmental entities from WBA suits, plaintiffs must still strictly comply with [the GIA's] notice of claim requirements regard-

less of the claim asserted." While we agree that plaintiffs must comply with the GIA's notice of claim requirements, we find nothing in the GIA to prevent such requirements from being effectively modified when read in conjunction with another applicable statute. Indeed, Thorpe's assertion ignores a fundamental precept of statutory interpretation, namely—as *Hall* reiterates—that the two statutes be read together. When construing legislation, "our primary goal . . . is to evince the true intent and purpose of the Legislature [as expressed through] the plain language of the [a]ct." *Hall*, 2001 UT 34, ¶ 15, 24 P.3d 958 (alteration in original) (citation and internal quotation marks omitted). "In doing so, we seek to render all parts thereof relevant and meaningful, and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative." *Id.* (citation and internal quotation marks omitted). *See Lyon v. Burton*, 2000 UT 19, ¶ 17, 5 P.3d 616 ("[W]here possible 'we . . . construe statutory provisions so as to give full effect to all their terms.'") (omission in original) (citation omitted). "Consequently, when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision." *Hall*, 2001 UT 34, ¶ 15, 24 P.3d 958. *See Lyon*, 2000 UT 19, ¶¶ 17–18, 5 P.3d 616.

¶ 19 The *Hall* court explicitly stated that the GIA "does not itself serve as the basis for liability or any cause of action." *Hall*, 2001 UT 34, ¶ 16, 24 P.3d 958. In contrast, the WBA creates a "specific statutory cause of action," *id.* ¶ 17, allowing employees to "bring a civil action for appropriate injunctive relief or actual damages, or both," Utah Code Ann. § 67–21–4(2), against governmental entities, *see Hall*, 2001 UT 34, ¶ 17, 24 P.3d 958.

¶ 20 Therefore, because the WBA is more specific in application than the GIA, the WBA's provisions—including its 180–day statutory period for filing a complaint—govern over the more general GIA provisions. *See id.* ¶ 15. Applied to this case, Thorpe was required, pursuant to the provisions of the GIA and the WBA when construed together, to file a notice of claim *and* a "civil action"—i.e., a district court complaint—within 180 days of the Board's denial of his appeal, which, again, he now claims is the retaliatory action he suffered for blowing the whistle. This does not lead to a nonsensical result. Rather, it only requires a WBA claimant to file a GIA notice early enough in the 180–day period to allow the governmental entity 60 days to evaluate the claim so that, at the elapse of that time, the claimant can file a civil action before the 180 days have passed. Indeed, to read these statutes in any other manner would render superfluous section 67–21–4(2) of the WBA, which specifically requires an employee to bring a WBA cause of action within 180 days of the underlying violation. *See* Utah Code Ann. § 67–21–4(2). Therefore, the district court did not err in granting the City summary judgment on Thorpe's WBA claim.[6]

¶ 21 Thorpe argues, and we recognize, that our interpretation of these two statutes to require strict compliance with the WBA provisions will technically require plaintiffs to file a notice of claim related to a WBA cause of action much sooner than the "one year after the claim arises" contemplated by the GIA. *See* Utah Code Ann. § 63–30d–402. Indeed, as noted, because the GIA requires

---

6. We also reject Thorpe's argument relying on the Tenth Circuit's decision in *Youren v. Tintic School District*, 343 F.3d 1296 (10th Cir.2003). In *Youren*, the court stated that

the [federal] district court denied the defendants' motion for judgment as a matter of law on [the plaintiff]'s whistleblower claim, holding that [the plaintiff] met the 180–day statute of limitations for bringing claims under the Whistleblower Act by filing a timely notice of claim, even though the complaint was not filed until after the 180–day deadline.

*Id.* at 1299–1300. The Tenth Circuit opined that the district court had rejected the defendants'

arguments because the plaintiff's notice of claim "was sufficient to serve the purposes of the statute's prompt notification requirements." *Id.* at 1302. However, because "the defendants waived their statute of limitations affirmative defense," the Tenth Circuit "decline[d] to reach the merits of" whether a complaint itself—rather than a mere notice of claim—must be filed within 180 days. *Id.* at 1305. Given the Tenth Circuit's refusal to address the merits of the issue, we remain unmoved by Thorpe's reliance on *Youren*, which is not binding on us in any event.

that the governmental entity be allowed 60 days to review the notice of claim and approve or deny it, *see id.* § 63–30d–403(1)(a), it follows that the plaintiff must submit the notice of claim before the elapse of 120 days from the date of the alleged WBA violation so that, after the governmental entity either denies or fails to approve the notice of claim within 60 days, the plaintiff may still file a timely complaint within the WBA's 180–day statutory period. When the WBA and the GIA are construed together, employees wishing to file suit under the WBA must proceed more quickly than either the WBA or the GIA would suggest when their respective terms are considered in isolation.

## II. Wrongful Discharge, Due Process Violations, and Breach of Contract

■ ¶ 22 Thorpe argues that the district court erred in granting the City summary judgment on his wrongful discharge, due process, and breach of contract claims. Although Thorpe has crafted his arguments to raise three separate causes of action, we agree with the district court that the three claims alleged by Thorpe all implicate "obligations that arise out of or relate to the hearing [Thorpe] received before the Board." In other words, Thorpe is really asserting that the Board abused its discretion by upholding his termination. But the merits of this contention are not properly before us. We agree with and affirm the district court's conclusion that it lacked jurisdiction to review the Board's decision with respect to these three claims.

¶ 23 Utah Code section 10–3–1106(6)(a) provided that "[a] final action or order of the appeal board *may* be appealed to the Court of Appeals by filing with that court a notice of appeal." [7] Utah Code Ann. § 10–3–1106(6)(a) (Supp.2004) (emphasis added). Thorpe contends that section 10–3–1106 "provides a permissive adjudicative procedure," but he argues that an appeal under this section "is not [his] exclusive remedy." He argues that section 10–3–1106 "allows, but does not require, review by a municipal appeal board" followed by review by the court of appeals because, he alleges, the Legislature must expressly declare its intent that a statute provide an exclusive remedy or that it requires mandatory proceedings. We disagree.

¶ 24 It is clear to us that in section 10–3–1106(6)(a), the term "may" is permissive only in the sense that it effectively allows a terminated employee to choose whether or not to appeal the decision of the appeal board.[8] *See id.* It is not permissive in the sense that the employee may seek review in the court of appeals if he likes but may complain in some other judicial venue if he prefers. On the contrary, the statute is clear that the only court to which the employee may seek initial recourse from the Board, and similar entities, is the Utah Court of Appeals. *See id. Cf. Sim v. Washington State Parks & Rec. Comm'n*, 90 Wash.2d 378, 583 P.2d 1193, 1195 (1978) (en banc) (stating that "[i]n our view the use of the word 'may' in this statute operates to grant permission to bring the pertinent petition in a certain form" and if a party chooses to do so "the statute provides only one place in which to file it").

■ ¶ 25 We agree with the district court, which stated that "[i]n enacting Utah Code

---

**7.** In 2008, Utah Code section 10–3–1106(6)(a) was amended, substituting "reviewed by" for "appealed to" and "petition for review" for "notice of appeal." Utah Code Ann. § 10–3–1106(6)(a) & amend. notes (Supp.2010). These changes reflect the reality that in considering administrative determinations, we are usually engaged in judicial review of agency action, commenced by a petition for review that begins an original proceeding in this court, rather than a conventional appeal, commenced by filing a notice of appeal.

**8.** We agree with the district court that the permissive nature of section 10–3–1106(6)(a) is equivalent to rule 3(a) of the Utah Rules of Appellate Procedure, which permits appeals from final orders, *see* Utah R.App. P. 3(a) ("An appeal *may* be taken from a district or juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments … by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4.") (emphasis added). In other words, a litigant is not required to take an appeal, but he may. If he chooses to do so, he has only one method of appeal, namely that prescribed in the applicable statutes and rules. He is not free to pursue a method and venue of recourse more to his liking.

[section] 10–3–1106, the Legislature deliberately granted jurisdictional authority to review decisions of municipal boards of appeal to the Utah Court of Appeals." Additionally, Thorpe has failed to present any statute or case law indicating that review of the decisions of municipal appeal boards may initially be pursued in any court other than this one. *Cf.* Utah Const. art. VIII, § 5 ("The district court shall have appellate jurisdiction as provided by statute."). Therefore, where the gravamen of the complaint is termination of public employment by a merit employee, *see Pearson v. South Jordan Emp. App. Bd.,* 2009 UT App 204, ¶¶ 10–14, 216 P.3d 996, any judicial review must be sought in the court of appeals.

### III. Unjust Enrichment

■ ¶ 26 Thorpe alleges that he adequately pleaded his causes of action for unjust enrichment and that, therefore, the district court erred in granting summary judgment in favor of the City on those claims. The City argues that because Thorpe failed to demonstrate the lack of an adequate remedy at law, summary judgment was proper. Once again, the City is correct.

■ ¶ 27 To establish a claim of unjust enrichment, it must be shown that (1) a benefit was conferred, (2) the conferee appreciated or had knowledge of the benefit, and (3) the conferee accepted or retained the benefit under circumstances making it inequitable to retain the benefit without making payment of its value. *See Desert Miriah, Inc. v. B & L Auto, Inc.,* 2000 UT 83, ¶ 13, 12 P.3d 580. Nevertheless, we need not analyze these three elements because, on appeal, Thorpe concedes that the district court correctly noted that an unjust enrichment claim is an equitable remedy.

■ ¶ 28 It is settled in Utah that "the law will not imply an equitable remedy when there is an adequate remedy at law." *UTCO Assocs., Ltd. v. Zimmerman,* 2001 UT App 117, ¶ 19, 27 P.3d 177, *cert. denied,* 32 P.3d 249 (Utah 2001). *See Buckner v. Kennard,* 2004 UT 78, ¶ 56, 99 P.3d 842 (stating that "equitable jurisdiction is precluded if the plaintiff has an adequate remedy at law"); *American Towers Owners Ass'n v. CCI*

*Mech., Inc.,* 930 P.2d 1182, 1193 (Utah 1996) ("[I]f a legal remedy is available, ... the law will not imply the equitable remedy of unjust enrichment."). Moreover, when seeking an equitable remedy, a plaintiff " 'must affirmatively show a lack of an adequate remedy at law on the face of the pleading.' " *Ockey v. Lehmer,* 2008 UT 37, ¶ 44 n. 42, 189 P.3d 51 (citation omitted).

¶ 29 Thorpe disagrees that he had an adequate remedy at law, but his complaint wholly fails to allege the lack of an adequate legal remedy. "Because equitable relief is only available in those cases where legal relief is unavailable," *id.* ¶ 48, and because Thorpe failed to claim that no adequate legal remedy was available, "we affirm the district court's refusal to fashion an equitable remedy for [Thorpe]," *id.*

### CONCLUSION

¶ 30 We conclude that the district court ruled correctly in granting summary judgment in favor of the City on each of Thorpe's claims. Thorpe's notice of claim on his whistleblower cause of action failed to comply with the requirements of the WBA and the GIA when read together. The district court lacked jurisdiction to hear his wrongful discharge, due process, and breach of contract arguments. And Thorpe's unjust enrichment claim fails for lack of any timely allegation that he did not have an adequate remedy at law.

¶ 31 Affirmed.

¶ 32 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and CAROLYN B. McHUGH, Associate Presiding Judge.